IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICHAEL J. MANDELBROT, MANDELBROT LAW FIRM, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | C.A. No. 13-1032-GMS |
| ARMSTRONG WORLD INDUSTRIES ASBESTOS PERSONAL INJURY SETTLEMENT TRUST, BABCOCK & WILCOX ASBESTOS PERSONAL INJURY SETTLEMENT TRUST, OWENS CORNING/FIBREBOARD ASBESTOS PERSONAL INJURY TRUST, FEDERAL MONGUL ASBESTOS PERSONAL INJURY TRUST, UNITED STATES GYPSUM ASBESTOS PERSONAL INJURY SETTLEMENT TRUST, CELOTEX ASBESTOS SETTLEMENT TRUST, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM

### I. INTRODUCTION

Michael J. Mandelbrot and The Mandelbrot Law Firm (collectively, the "Plaintiffs") filed this action seeking declaratory and injunctive relief against six asbestos settlement trusts (collectively, the "Defendants").[1] (D.I. 1.) Currently before the court is the Defendants' motion to dismiss this suit for lack of subject matter jurisdiction pursuant to Federal Rule of Civil

---

[1] Each of the Defendants is a trust "formed as a vehicle for the payment of claims related to personal injury resulting from exposure to asbestos contained in products manufactured by companies that had sought protection from creditors under chapter 11 of the United States Bankruptcy Code." (D.I. 1, ¶ 13.) The beneficiaries of the trusts "must submit a claim form and supporting documentation to substantiate that the claimant meets the specified criteria," and the Defendants are authorized to develop auditing procedures to ensure the reliability of submitted claims. (*Id*, ¶ 16–18.)

Procedure 12(b)(1) on the grounds that the plaintiffs lacks standing. (D.I. 21.) For the reasons that follow, the motion to dismiss the Plaintiffs' suit is granted without prejudice, with leave for the Plaintiffs to amend their complaint by naming a plaintiff with Article III standing.[2]

## II. BACKGROUND[3]

Plaintiffs specialize in preparing and filing claims with settlement trusts on behalf of claimants, including claims with the Defendants. (D.I. 1, ¶¶ 23–25.) The Plaintiffs' complaint arises out of the Defendants' decision in October 2012 to suspend all offers to pay claims of claimants represented by the Plaintiffs, pending further review of claims filed by the Plaintiffs. (*Id.*, ¶ 10.) The Defendants' decision to audit the claims was in part based on adversarial proceedings taking place in California, for allegedly fraudulent claims submitted by Plaintiffs to trusts in that state. (*Id.*, ¶¶ 28–34.) The Defendants additionally sought advance payment from the Plaintiffs for the expected costs of the audit; however the Plaintiffs refused to enter into such an agreement. (*Id.* at ¶¶ 58–59.) To date, the Defendants have not lifted the suspension.

The Plaintiffs brought suit against the defendants arguing that the Defendants' refusal to process existing claims or accept new claims[4] submitted by the Plaintiffs is causing serious and substantial harm to claimants, and by extension, financial harm to the Plaintiffs. The Plaintiffs seek a declaratory judgment that the Defendants have violated, and continue to violate, the terms of their respective Distribution Procedures by refusing to process the Plaintiffs' claims and demanding advance costs for the audit. (D.I. 1, ¶¶ 69, 77.) Additionally, the Plaintiffs seek

---

[2] Accordingly, because this court grants the defendants' motion to dismiss without prejudice, the plaintiffs' pending motion for a preliminary injunction is denied as moot.

[3] There are several factual disputes between the Plaintiffs and the Defendants. At this stage, the court will adopt the Plaintiffs' version of events

[4] In fact, Plaintiffs are able to submit new claims to the Defendants via physical, hard copies, in order to avoid a statute of limitations problem for claimants; Plaintiffs, however, are suspended from using the Defendants electronic claim filing system. (D.I. 11, ¶¶ 31–32.) Plaintiffs argue that this option "does little to relieve the burden of sanctions on [Plaintiffs]."). (*Id.*, ¶ 32.)

2

preliminary and permanent injunctive relief, enjoining the Defendants from refusing to process claims submitted by the Plaintiffs and from requiring the Plaintiffs to pay advance costs for the audit. (*Id.*, ¶ 79.) Finally, the Plaintiffs seek attorneys' fees and costs. (*Id.*, ¶ 81.)

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides that a party may bring a motion to dismiss for lack of subject matter jurisdiction. A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter. *See St. Thomas–St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir.2000) ("The issue of standing is jurisdictional."); *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir.1970) ("[W]e must not confuse requirements necessary to state a cause of action . . . with the prerequisites of standing.").

Pursuant to Rule 12(b)(1), the court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir.2003). On a motion to dismiss for lack of standing, the plaintiff "bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *FOCUS v. Allegheny Cnty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir.1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)) (internal quotation marks omitted). At the motion to dismiss stage,

3

"general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan,* 504 U.S. at 561; *Ballentine v. United States,* 486 F.3d 806, 810 (3d Cir. 2007).

## IV. DISCUSSION

The parties' arguments concern both Article III constitutional requirements for standing and the Federal Rule of Civil Procedure 17(a) requirement that the plaintiff is a real party in interest. (D.I. 21; D.I. 22.) The court looks first to Article III standing and finds that the plaintiffs have neither individual standing nor representative standing.[5]

The doctrine of standing incorporates both a constitutional element and a non-constitutional, "prudential" element. *See Pitt News v. Fisher,* 215 F.3d 354, 359 (3d Cir. 2000); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 484 (3d Cir. 1998). Constitutional standing is a threshold issue that the court should address before examining issues of prudential standing and statutory interpretation. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998); *Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.,* 165 F.3d 221, 224 (3d Cir. 1998). Constitutional standing has three elements, all of which must be met: (1) the plaintiff must have suffered an injury in fact; (2) there must be a causal nexus between that injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable judicial decision. *See Joint Stock Soc'y v. UDV N. Am., Inc.,* 266

---

[5] The court grants the Defendant's motion to dismiss for lack of Article III standing and therefore does not address the parties' 17(a) arguments. The Federal Rules of Civil Procedure cannot expand the subject matter jurisdiction of federal courts beyond the limits of U.S. Constitution. 28 U.S.C. § 2072(b); *see Zurich Ins. Co. v. Logitrans, Inc.,* 297 F.3d 528, 532–33 (6th Cir. 2002); *Kent v. N. Cal. Reg'l Office of the Am. Friends Serv. Comm.,* 497 F.2d 1325, 1329 (9th Cir. 1974) ("Rule 17(a) does not give [plaintiffs] standing; 'real party in interest' is very different from standing." (citing 6 C. Wright & A. Miller, Federal Practice and Procedure § 1542, at 641 (1971))).

F.3d 164, 175 (3d Cir. 2001) (citing *Lujan*, 504 U.S. at 560–61).[6] The court finds that the Plaintiffs' have not suffered an injury in fact to confer constitutional standing.

The Plaintiffs argue that constitutional standing is satisfied because they have suffered "damages directly and in their representative capacity as lawyers representing" beneficiaries of the Defendants, as a result of the Defendants' refusal to process claims in violation of the terms of the Distribution Procedures. (D.I. 22 at 9). First, the Plaintiffs argue that they have "representative standing" based on their role as counsel for the allegedly harmed trust beneficiaries. (D.I. 22 at 10–12.) Analogizing their position to that of a parent or guardian, the Plaintiffs argue that they are seeking relief on behalf of injured claimants, whose claims have not been processed by Defendants during the suspension. (*Id.*)

The court finds that the Plaintiffs cannot assert the injuries of their clients as a basis for their own standing. The Delaware courts have held that adverse actions taken by a trust do not create legally cognizable injuries for non-beneficiary plaintiffs. *See Sergeson v. Delaware Trust Co.*, 413 A.2d 880, 882 (Del. 1980). This is true even for plaintiffs who "would nonetheless obtain an advantage from enforcing a trustee's duty to the beneficiary." *Id.* In *Sergeson*, the Delaware Supreme Court adopted the general rule expressed in the Restatement (Second) of Trusts that "[n]o one except a beneficiary or one suing on his behalf can maintain a suit against the trustee to enforce the trust or to enjoin or obtain redress for a breach of trust." Restatement (Second) of Trusts § 200 (1959). The Plaintiffs also cannot maintain standing because of the indirect benefits they would receive from enforcement of the terms. *See Diamond v. Charles*, 476 U.S. 54, 70–71 (1986) (holding that an interest in attorney's fees is insufficient for standing

---

[6] Although the Plaintiffs assert that the constitutional standing element is undisputed, (*Id.*), the Defendants do in fact argue that the Plaintiffs have not established injury in fact. (D.I. 23 at 3–4.) As such, the court will analyze the constitutional element, incorporating the arguments made by the Plaintiffs in other contexts.

5

purposes); *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) ("There "is an important distinction between simply *hiring* a lawyer and *assigning* a claim to a lawyer .... The latter confers a property right ... [sufficient to establish standing]; the former does not." (emphasis in original) (quoting *Sprint Commc'ns Co. v. APCC Servs. Inc.*, 554 U.S. 269, 270 (2008)) (internal quotation marks omitted)).

Moreover, the standard for third-party standing in order to sue on another's behalf is well established. The court must consider "a) the intimacy of the relationship between the parties; b) any impediment the party might have to advancing its own rights; and c) the identity of the interests between the parties." *Penn. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 295 (3d Cir. 2002). The Plaintiffs have not met this standard.[7]

Alternatively, the Plaintiffs argue that they have an independent basis for standing because there was a contractual relationship between the Plaintiffs and the Defendants. (*Id.* at 13–15.) More specifically, the Plaintiffs argue that the Distribution Procedures created an implied-in-fact contractual relationship. (*Id.*); *see Capital Mgmt. Co. v. Brown*, 813 A.2d 1094, 1098 (Del. 2002) ("[A]n implied contract is one inferred from the conduct of the parties, though not expressed in words."). The Plaintiffs argue that the Distribution Procedures envision the involvement of lawyers or third parties aiding individual claimants, thus forming an implied contract.[8] (D.I. 22 at 13–15.) The Defendants counter that no implied contractual rights extend

---

[7] The Plaintiffs' only mention of impediments to the actual claimants bringing a lawsuit is "the economic impact on the claimants if each claimant had to hire counsel to bring suit, especially for the many claimants who are likely to receive only a small distribution." (D.I. 23 at 11.) However, the Plaintiffs provide no factual allegations for why claimants are not joined as parties, and as the Defendants correctly point out, the Plaintiffs have not filed this suit as a class action to represent their interests. (D.I. 23 at 5.)

[8] Plaintiffs also argue there is standing on the basis of breach of the Electronic Filer Agreements ("EFAs"), express contracts that govern the submission of electronic claims. (D.I. 22 at 15.) This argument, however, rests on finding there was an underlying breach of the Distribution Procedures. (*Id.*)

6

to attorneys of claimants. (D.I. 23 at 9.) Instead, the Defendants maintain, the Distribution Procedures are the specific procedures by which *claimants* operate in order to have their claims processed. (*Id.*)

The court agrees with the Defendants that there is no contractual relationship between the Plaintiffs and the Defendants, express or implied. The Distribution Procedures do not require that a claimant be represented by an attorney; rather, they are in place only to guide claimants. Although Plaintiffs argue that the Distribution Procedures are highly technical and even by their terms envision lawyer involvement, (D.I. 22 at 13), the involvement is purely as assistance to the claimant. This role is confirmed by the language of the Distribution Procedures, which expressly limits the "rights and benefits" to the "holders" of the claims. (D.I. 1, Ex. A, ¶ 1.2.) In the absence of a contractual relationship between the Plaintiffs and the Defendants, breach of the Distribution Procedures does not furnish the Plaintiffs (on their own) a cause of action, and there is no standing.

## V. CONCLUSION

For these reasons, the Defendants' motion to dismiss for lack of subject matter jurisdiction is granted without prejudice, with leave to file an amended complaint naming a plaintiff with Article III standing. Accordingly, Plaintiff's motion for a preliminary injunction is denied as moot.

Dated: September 11, 2014

UNITED STATES DISTRICT JUDGE

7